AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

JUL - 5 2024

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Seizure of          )
*(Briefly describe the property to be seized)*  )
Undetermined Amount of U.S. Currency     )   Case No. 24MR1279
                                         )
                                         )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of ____New Mexico____ is subject to forfeiture to the United States of America under __18__ U.S.C. § __981 and 982__ *(describe the property)*:

Undetermined Amount of U.S. Currency in account # 620392277 associated with Raimundo GOMEZ, DOB: 04/06/1981, and Ronly GOMEZ, at JP Morgan Chase Bank, N.A.

The application is based on these facts:
See Affidavit attached and fully incorporated herein.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Rene Robles, Special Agent
_____
*Printed name and title*

Sworn to before me ~~and signed in my presence~~ via telephone.

Date: 7/5/2024

_____
*Judge's signature*

City and state: Las Cruces, New Mexico

Gregory B. Wormuth, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEIZURE WARRANT

I, Rene Robles, being duly sworn, do hereby depose and state as follows:

### BACKGROUND

1.  I am a Special Agent (SA) with the Department of Homeland Security, United States Immigration and Customs Enforcement, Homeland Security Investigations (HSI) assigned to the Assistant Special Agent in Charge, Las Cruces, New Mexico. During my tenure with HSI, I have been classified, trained and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 8, Title 18, Title 21, and Title 31 of the United States Code. I have conducted investigations related to immigration laws violations since 2008 and have specialized in investigations involving human smuggling. During my sixteen-year law enforcement career, I have received specialized training on the subjects of human smuggling and human trafficking and have been personally involved in investigations concerning the subject matter.

2.  Prior to my current position, I served as a Border Patrol Agent, Border Patrol Agent of Intelligence, and Supervisory Border Patrol Agent with the United States Border Patrol. I have served as a Task Force Officer (TFO) on two different HSI Task Forces in which I focused on immigration and drug investigations. As a TFO with HSI, I participated in investigations into alien smuggling, money laundering/financial, drug trafficking, and firearms violations. I have participated in numerous aspects of alien smuggling, drug trafficking, and firearms investigations including physical surveillance, execution of search and arrest warrants, undercover operations/recordings, witness interviews, electronic monitoring, the use of

1

confidential informants, the analysis of phone and financial records, and the arrest of hostage takers, alien smugglers, and drug smugglers.

3.   I have interviewed numerous defendants, and other witnesses having extensive knowledge of the modus operandi of major alien smuggling organizations (ASO) and Drug Trafficking Organizations (DTO) including those operating internationally. I have also spoken on numerous occasions with other experienced alien smuggling and hostage taking investigators, concerning the methods and practices of such violators. Furthermore, I have attended training courses specialized in alien smuggling. Through these investigations, training, experience, and conversations with other law enforcement personnel, I have become familiar with the methods alien smugglers conspire to take hostage, transport, conceal, harbor, or to shield from detection illegal aliens (IAs). I know, based upon my training and experience, as well as information relayed to me during the course of my official duties, that members of ASOs and DTOs routinely use electronic money remitter services, bank accounts, and bulk cash smuggling to distribute and receive earnings from alien smuggling and drug smuggling. During the course of these investigations, I have made numerous arrests and previously have been the affiant on applications for GPS tracking devices, arrests warrants, search warrants, and seizure warrants.

**PROPERTY TO BE SEIZED**

4.   This affidavit is in support of a seizure warrant for JP Morgan Chase Bank, N.A. Account #620392277, associated with Raimundo GOMEZ ("GOMEZ") and Ronly Gomez, at 2977 NW 94th St., Miami, Florida 33147, hereinafter referred to as "TARGET ACCOUNT".

**LEGAL AUTHORITY TO" SEIZE**

5.   I assert that, based upon the facts detailed in this A, ffidavit, probable cause exists to believe the aforementioned property listed in paragraph 4 was involved in and represents

proceeds, i.e., fruits, of violations of 8 U.S.C. § 1324 (Alien Smuggling). See Fed. R. Crim. P. 41(c). Pursuant to 8 U.S.C. § 1324(b)(1), "Any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of a violation of subsection (a), the gross proceeds of such violation, and any property traceable to such conveyance or proceeds, shall be seized and subject to forfeiture." Id. Additionally, the property listed in paragraph 4 is subject to civil forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(A) and (C) because it represents proceeds of and/or property involved in violations of 8 U.S.C. § 1324.

6. Civil forfeiture authority for the abovementioned violations exists under the following:

   a. Title 18 U.S.C. § 981(a)(1)(C): "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting a 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."[1] (emphasis added).

7. Title 18 U.S.C. § 982 also provides for criminal forfeiture of certain property upon conviction for violations of 8 U.S.C. § 1324. Regarding 8 U.S.C. § 1324, the statute

---

[1] 18 U.S.C. § 1956(c)(7)(A) includes as a "specified unlawful activity" "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." Section 1961(1)(F) includes "**any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens) . . . if the act indictable under such section of such Act was committed for the purpose of financial gain**." (emphasis added). Section 274 of the Immigration and Nationality Act includes the criminal offense codified under 8 U.S.C. § 1324.

3

provides the following:

> The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate, section 274(a) . . . of the Immigration and Nationality Act . . . shall order that the person forfeit to the United States, regardless of any provision of State law—(i) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the person is convicted; and (ii) any property real or personal—(I) that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or (II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.

18 U.S.C. § 982(a)(6)(A). Furthermore, if a person is charged in a criminal case with an offense for which the civil or criminal forfeiture of property is authorized, the government may include notice of the forfeiture in an indictment or information and, if the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. See 28 U.S.C. § 2461(c). If the property identified in paragraph 4 is subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A) or (C), therefore, it is also subject to forfeiture in a criminal case by operation of 28 U.S.C. § 2461(c).

**BACKGROUND CONCERNING ALIEN SMUGGLING FOR FINANCIAL GAIN**

8. Based on my training and experience with alien smuggling and money laundering investigations, and consultation with other agents who have been involved in such investigations, I know:

   a. Alien smugglers commonly launder their illicit proceeds by storing their illicit proceeds in one or more bank accounts, their residences, stash-houses, businesses,

4

and vehicles in order to have ready access to the proceeds and yet keep such items concealed from law enforcement.

b. Alien smugglers routinely have large quantities of U.S. currency on hand as proceeds. In addition, alien smugglers often have other assets generated by their illicit business, or purchased with cash earned, such as jewelry, foreign currency, vehicles, and other valuables. Evidence of such assets often is maintained at alien smugglers' businesses, residences, vehicles, safes, safe deposit boxes, and in bank accounts.

c. Alien smugglers often try to launder their illicit proceeds by hiding, transferring, and concealing their illicit proceeds by means including: (i) placing assets in names other than their own to avoid detection while maintaining control, (ii) laundering money through what appears to be a legitimate business or businesses, (iii) placing assets in one or more bank accounts that tend to be comingled with non-illicit proceeds; (iv) hiding the money in their homes, safes, safe deposit boxes, or vehicles, and (v) gambling the money or using the money to buy assets to make their illicit proceeds more difficult to trace.

## PROBABLE CAUSE FOR SEIZURE

9. The following information contained in this affidavit based on my training and experience, my personal participation in this investigation, and information provided to me by other law enforcement officers. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of this investigation known to me are contained within this affidavit, but only those necessary to establish probable cause for the seizure of the aforementioned TARGET ACCOUNT.

10. On July 2, 2024, United States Border Patrol agents (BPA) from Las Cruces, New Mexico were conducting traffic check operations at the immigration checkpoint located at Interstate 10, mile marker 120, west of Las Cruces. At approximately 11:20 pm, a red Freightliner tractor with flatbed trailer bearing Florida license plates approached the primary inspection and was stopped by BPAs. BPAs approached the driver, identified themselves as BPAs, and performed an immigration inspection. BPAs questioned the driver, GOMEZ, as to his citizenship. GOMEZ provided a Permanent Resident card and his Florida driver's license. BPA asked GOMEZ if any additional passengers were in the passenger compartment of the vehicle, but GOMEZ did not answer. BPAs shined a flashlight through the window into the sleeper compartment area of the tractor and saw additional passengers attempting to conceal themselves in the sleeper compartment. The tractor trailer was further inspected and BPAs encountered 15 additional passengers riding unrestrained on the top and bottom bunks of the sleeper compartment. BPAs questioned all 15 passengers as to their immigration status and citizenship. All 15 passengers admitted to being citizens and nationals of Guatemala and Mexico, and being in the United States illegally without valid immigration documentation. GOMEZ and all passengers were detained pending an investigation.

11. While BPAs conducted an inventory of the property in GOMEZ' possession, BPAs found approximately $13,000 dollars in U.S. currency. BPAs also found a deposit receipt reflecting a deposit of $8,900 dollars in cash into a checking account number ending in 2277 for JP Morgan Chase Bank, N.A. The receipt was dated July 2, 2024, and showed the transaction occurred in Albuquerque, New Mexico. The receipt further showed a total balance in the account of $25,488.67. BPAs also found a blank check from JP Morgan Chase Bank, N.A. in the name of Ronly Gomez for the TARGET ACCOUNT which ends in 2277.

12.     HSI SAs conducted a post-Miranda interview of GOMEZ. GOMEZ stated the following: GOMEZ is the owner of the tractor trailer. GOMEZ claimed ownership of the bulk U.S. currency, bank receipt, and blank check for the TARGET ACCOUNT. GOMEZ has been working for the past month transporting illegal aliens ("IAs") from El Paso, Texas to Deming, New Mexico. During that month, GOMEZ transported five additional groups of approximately seven to eight IAs per group. GOMEZ earns $800 dollars per IA he transports. This group of 15 IAs was the largest group GOMEZ has transported. GOMEZ was aware that the individuals that he was picking up were IAs. GOMEZ admitted that most of the U.S. currency found in the tractor trailer were proceeds from smuggling IAs. GOMEZ further admitted that the deposit into the TARGET ACCOUNT shown on the deposit receipt was also proceeds from alien smuggling. GOMEZ stated that all of the funds in the TARGET ACCOUNT were proceeds from transporting IAs. GOMEZ is the primary account holder of the TARGET ACCOUNT and GOMEZ' son, Ronly Gomez, is also an authorized user of the TARGET ACCOUNT. When providing his biographical information, GOMEZ provided his address which was the same as the address listed for Ronly Gomez on the blank check described above.

13.     Based on my training and experience, I believe that efforts to restrain or enjoin the contents of the TARGET ACCOUNT pursuant to 21 U.S.C. § 853(e), as incorporated by 18 U.S.C. § 982(b)(1), would be insufficient to maintain the property for forfeiture. The funds held in the account are highly liquid and would therefore be easy to dissipate and difficult to trace. Furthermore, the property constitutes evidence of the criminal offenses described in this Affidavit and therefore should be maintained in the custody of the United States to facilitate its evidentiary use, as well as its forfeiture.

14. Further, based on the fact that the accounts contain fungible proceeds which are subject to rapid dissipation, it is hereby requested that Special Agents of Homeland Security Investigations and the Department of Treasury, be authorized to affect the seizure of the above referenced accounts and direct JP Morgan Chase Bank, N.A. to do the following:

## CONCLUSION

15. Based on the foregoing, there is probable cause to believe that the TARGET ACCOUNT and its contents constitute, are derived from, or are traceable to proceeds of violations of 8 U.S.C. § 1324, and/or were used to facilitate the commission of that offense. Accordingly, the TARGET ACCOUNT and its contents are subject to forfeiture to the United States of America pursuant to 8 U.S.C. § 1324(b)(1), and 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(6)(A).

Respectfully submitted,

_____
Rene Robles, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me by telephone on this 5th day of July 2024:

_____
THE HONORABLE GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

8